**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| BANK OF OKLAHOMA, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number CIV-04-1517-C |
| | ) | |
| MONUMENTAL LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is a Motion for Summary Judgment filed by Defendant Monumental Life Insurance Company (Monumental).  Substitute Plaintiff Bank of Oklahoma, N.A. (Bank) timely filed a response to which Monumental filed a reply.  The Court, upon full consideration of the litigants' submissions and the applicable law, now **GRANTS** Monumental's Motion for Summary Judgment.

**BACKGROUND**

In July 1999, David and Linda Aumann (Mr. Aumann, Mrs. Aumann, or the Aumanns) financed their mortgage for the purchase of a home with Bank.  During the financing process, Bank introduced the Aumanns to a mortgage life insurance policy from Monumental (Policy); Bank did so in accordance with the terms of an altogether separate contract between Bank and Monumental regarding the marketing of mortgage insurance products to Bank's mortgage customers (Marketing Contract)  In mid-July 1999, Monumental approved Mr. Aumann's application for the life insurance (Application) and

issued a certificate of insurance (Certificate) stating an effective date of September 1, 1999. Included, however, in Monumental's Application is a provision requiring the initial premium to be paid prior to the Policy becoming effective.

On July 21, 1999, Bank notified the Aumanns that their first mortgage payment would commence on September 1, 1999, in the amount of $574.92. Bank then notified the Aumanns on July 30, 1999, that their September mortgage payment would increase to include Monumental's monthly premium for the Policy. During this time, and unbeknownst to the Aumanns, Bank was under a prior contractual obligation to the Comanche County Home Finance Authority to assign the Aumanns' mortgage to Countrywide Home Loans, Inc. (Countrywide). Bank notified the Aumanns on August 12, 1999, that their mortgage would transfer to, and be serviced by, Countrywide starting September 1, 1999. Countrywide also notified the Aumanns on August 16, 1999, of the transfer and that the Aumanns were to submit their September 1, 1999, first payment to Countrywide in the amount of $574.92—the same payment amount Bank initially told the Aumanns on July 21, 1999, and which did not include the premium for the Policy.

Mr. Aumann passed away in August 2002. Mrs. Aumann requested Monumental to pay off the mortgage loan per the Policy's terms. Monumental declined her claim on the ground that the Policy never became effective as the requisite premiums were never paid. Indeed, Monumental never received a premium payment on the Policy, and neither Bank nor Countrywide collected a premium payment for the Policy.

Mrs. Aumann commenced this action against multiple defendants in Oklahoma state court sounding in contract and in tort.  She alleges that Monumental and Countrywide unreasonably denied her claim covered under the Policy.  Countrywide timely removed the action to federal court under 28 U.S.C. § 1332, the diversity statute.  Subsequently, Mrs. Aumann amended her complaint, naming Bank as a defendant in the action.

Mrs. Aumann and Bank resolved their differences and entered into a settlement agreement wherein Mrs. Aumann assigned her claims to Bank.  In December 2005, the Court dismissed Mrs. Aumann's claims against Bank, granted the substitution of Bank as the new party plaintiff, and dismissed Mrs. Aumann from the action.  Bank subsequently settled all claims with Countrywide and the Court dismissed Countrywide from the action, leaving Monumental as the sole defendant.  Monumental now moves the Court for summary judgment under Fed. R. Civ. P. 56.

<u>STANDARD OF REVIEW</u>

In a diversity case, the Court applies the substantive law of Oklahoma, including its choice of law rules.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  The Court finds that Monumental issued the Certificate to an Oklahoma domiciliary and also intended for Oklahoma law to apply; accordingly, Oklahoma law governs the interpretation of the Policy.  15 Okla. Stat. § 162; <u>Rhody v. State Farm Mut. Ins. Co.</u>, 771 F.2d 1416, 1420 (10th Cir. 1985).

Summary judgment is proper only if Monumental, as the moving party, shows "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter

of law." Rule 56(c).  The Court's function, at the summary judgment stage, is not to weigh the evidence, but to determine whether there is a genuine issue for trial.  Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994).  "An issue is 'genuine' if, [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The mere existence of a scintilla of evidence in support of the [Bank]'s position is insufficient to create a dispute of fact that is 'genuine' . . . . "  Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).  Monumental, as the party not bearing the burden of persuasion at trial, need not negate Bank's claims, but may point out to the Court Bank's lack of evidence on an essential element of a claim.  Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).   Bank will avoid summary judgment only by going beyond the pleadings and presenting evidence sufficient to establish the existence, as a triable issue, of an essential and contested element of the case.  Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999).  "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  See Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248).  When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmoving party (Bank) and draws all reasonable inferences in it's favor.  See Anderson, 477 U.S. at 255; Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

## DISCUSSION

The litigants' core dispute is whether the Policy issued by Monumental provided coverage at the time of Mr. Aumann's death.  Monumental argues that the Policy's coverage never became effective, and that if coverage ever became effective, it either lapsed due to nonpayment of the requisite premium, or it terminated when Bank transferred the underlying mortgage to Countrywide.  Monumental also argues that it reasonably and legitimately disputed Mrs. Aumann's claim.  Therefore, Monumental concludes that summary judgment is appropriate on Mrs. Aumann's breach of contract and bad faith claims.

Bank contends that Monumental breached the Marketing Contract first, causing the Policy to be ineffective, thus Monumental is estopped from denying coverage.  Bank also contends that Monumental acted in bad faith by denying a covered claim and by failing to make a reasonable evaluation of Mrs. Aumann's claim before denying coverage.  Therefore, Bank concludes that summary judgment is inappropriate.

## I.     Bank's Breach of Contract Claim.

Bank proffers the so-called "first breach" defense and states that "[g]iven the facts of this case, Monumental Life should be estopped to claim non-payment of the insurance premium."  (Pl's Resp., Dkt. No. 52, at 9.)  In support of its statement, Bank argues that Monumental materially breached its obligations to Bank under the terms of the Marketing Contract when Monumental

> failed to (i) have in place adequate internal controls and procedures in place [sic] with Bank of Oklahoma to effectively monitor the status of insurance payments that were supposed to be collected by Bank of Oklahoma,

(ii) properly direct Bank of Oklahoma to collect the premiums per the correspondence indicating the premium would be collected, (iii) notify the late Mr. Aumann that the premiums were not being collected as previously indicated, and (iv) notify the late Mr. Aumann that there was no coverage when earlier actions and correspondence would have caused a reasonable person to believe that . . . coverage was in effect.

(Id. at 13-14.)

Bank's argument is ineffective for two reasons. First, beyond its conclusory assertion, Bank fails to demonstrate the applicability of estoppel in any form. See Sullivan v. Buckhorn Ranch P'ship, 2005 OK 41, ¶ 31, 119 P.3d 192, 202 (defining equitable estoppel); Barber v. Barber, 2003 OK 52, ¶ 7, 77 P.3d 576, 579 (defining promissory estoppel); Messler v. Simmons Gun Specialties, Inc., 1984 OK 35, ¶ 18, 687 P.2d 121, 128 (defining judicial estoppel); Laws v. Fisher, 1973 OK 69, ¶¶ 1, 4-7, 513 P.2d 876, 877-78 (defining collateral estoppel). Second, Bank fails to come forth with evidence that Monumental breached a duty owed to either Bank or Mr. Aumann under the Marketing Contract. The controls Bank claims Monumental failed to have in place are not required by the Marketing Contract. In effect, Bank seeks to rewrite the Marketing Contract by adding duties to Monumental not previously agreed upon—this the Court cannot do. Canaras v. Lift Truck Servs., Inc., 322 A.2d 866, 873 (Md. 1974).[1] Bank fails to show that Monumental first breached a contractual duty under the Marketing Contract and then link that breach to Bank's failure to collect the

---

[1] The Policy between the Aumanns and Monumental is governed by Oklahoma law. The Marketing Contract between Bank and Monumental, though, contains a choice of law provision specifying the application of Maryland law. (Pl.'s Resp, Ex. D-6, at BOK 000265.) Generally, choice of law provisions are enforceable in Oklahoma. Williams v. Shearson Lehman Bros., Inc., 1995 OK CIV APP 154, ¶ 14, 917 P.2d 998, 1002. Therefore, the Court looks to Maryland law to interpret the rights and duties of Bank and Monumental under the Marketing Contract.

premium.  Accordingly, the Court turns to Monumental's arguments for summary judgment on the breach of contract claim.

Monumental first argues that Mr. Aumann's coverage never became effective as the requisite premiums were never paid.  Monumental relies upon a provision in Monumental's Application that requires payment of the initial premium prior to the Policy becoming effective.  Monumental correctly points out that requiring payment of the initial premium before extending coverage is an enforceable condition precedent under Oklahoma law.  See Bankers Reserve Life Co. v. Rice, 1924 OK 533, ¶ 2, 226 P. 324, 325.  An application for insurance, with nothing more, is only a proposal and not a contract.  Hartford Fire Ins. Co. v. Wade, 1953 OK 156, ¶ 12, 257 P.2d 1064, 1067.  Monumental asserts that the Application is part of the Policy and relies upon verbiage within the Application to support its summary judgment motion; however, Monumental fails to demonstrate that Mr. Aumann's Application is properly before the Court as a legitimate portion of the Policy.  36 Okla. Stat. §§ 3602,[2] 3608,[3] 3621.[4]  Because the Court must draw all reasonable inferences in Bank's favor, the Court does not view the Application as part of the Policy.  Instead, the Court looks solely at

---

[2] "'Policy' means contract of or agreement for effecting insurance, or the certificate thereof, by whatever name called, and includes all clauses, riders, endorsements and papers attached thereto and a part thereof."  § 3602.

[3] "No application for the issuance of any life insurance policy or contract shall be admissible in evidence in any action relative to such policy or contract, unless a true copy of the application was attached to or otherwise made a part of the policy when issued."  § 3608(A).

[4] "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy."  § 3621.

the remaining document that could comprise the Policy—the Certificate issued by Monumental. The Certificate does not contain a premium payment condition precedent; therefore, Bank's first argument is ineffectual.[5]

Monumental next argues that if the Policy's coverage ever were effective, it lapsed due to nonpayment of the premium. The Certificate states that "[y]our coverage automatically ends on . . . (2) the end of the period for which any required premium payment has not been made, subject to the [31-day] Grace Period." (Def.'s Mot. Summ. J., Dkt. No. 37, Ex. 7, at AUM 0025-26.). Under Oklahoma law, a provision providing for the lapse of coverage for failure to timely pay the premium is a valid provision, enforceable on the insured. Gen. Am. Life Ins. Co. v. Brown, 1936 OK 325, ¶ 9, 56 P.2d 809, 812. Bank admits that Monumental never received a premium payment on the Policy, and that neither Bank nor Countrywide collected a premium payment for the Policy. (Compare Pl.'s Br., at 5, ¶¶ 13, 14 with Def.'s Mot. Summ. J., at 5, ¶¶ 13, 14.) Even if the Court assumes, arguendo, that the Policy was effective and provided coverage for Mr. Aumann, his coverage lapsed at the end of October 1999 due to nonpayment of the premiums—well before his

---

[5] If the Application were a part of the Policy, no contract would have ever been made between the Aumanns and Monumental. The Application clearly outlined as an enforceable condition precedent to the making of the contract that the Aumanns must pay the initial premium before the Policy provided the agreed-upon coverage. Oklahoma law charges the Aumanns with the knowledge and legal effect of unambiguous provisions in the Application; as a result, a contract for coverage would not have formed as the Aumanns failed to comply with a condition precedent. Inola Mach. & Fabricating Co. v. Farmers New World Life Ins. Co., 631 F.2d 712, 714 (10th Cir. 1980). Additionally, in response to a request for admission from Monumental, Mrs. Aumann stated that "David Aumann did not have a contract of insurance with 'Monumental.'" (Def.'s Mot. Summ. J., Dkt. No. 37, Ex. 2 at 12.)

death in August 2002.  Monumental has demonstrated that there is no genuine issue to try on Bank's breach of contract claim; therefore, summary judgment as a matter of law is appropriate.  In light of the foregoing analysis, the Court need not address Monumental's third argument.

## II.     Bank's Bad Faith Claim.

Bank also alleges that Monumental breached its duty of good faith and fair dealing by failing to pay a claim covered under the Policy, and for failing to reasonably evaluate the claim before denying coverage.  Bank's arguments are of no effect as a bad faith tort claim cannot be sustained absent a valid claim of liability under the Policy.  Davis v. GHS Health Maint. Org., Inc., 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210.  Therefore, summary judgment as a matter of law is also appropriate on Bank's bad faith claim.

### CONCLUSION

The Court finds that the Policy was not in effect at the time of Mr. Aumann's death. Furthermore, the Court finds that there are no genuine issues of material fact in dispute and that Monumental is entitled to summary judgment as a matter of law on Bank's breach of contract and bad faith claims.  Accordingly, Monumental Life Insurance Company's Motion for Summary Judgment (Dkt. No. 37) is GRANTED.  A judgment will enter accordingly.

IT IS SO ORDERED this 17th day of March, 2006.

ROBIN J. CAUTHRON
United States District Judge